**LLOYD et al. v. THORP et al.**

**No. 10883.**

Court of Civil Appeals of Texas. Dallas. July 11, 1931.

Rehearing Denied Sept. 26, 1931.

J. H. Synnott, of Dallas, for plaintiffs in error.

Thompson & Taylor, of Dallas, for defendants in error.

JONES, C. J.

In a suit on an indemnity bond, E. V. Thorp, state manager of Great American Casualty Company, and the Great American Casualty Company, a foreign corporation, as coplaintiffs, recovered judgment against George D. Lloyd, as principal, and J. H. Synnott and P. G. Cameron, as sureties on the bond, in the sum of $231.10 with interest at the rate of 6 per cent. per annum; the sureties, Synnott and Cameron, were given judgment over against Lloyd for such part of the judgment as is paid by them. Plaintiffs in error have duly perfected an appeal by writ of error. The necessary facts are as follows:

On November 27, 1928, Lloyd entered into an agency contract with defendants in error through state manager, Thorp. That portion of the contract, material to the issues here involved, reads: "The party of the first part (Great American Casualty Company) hereby appoints the party of the second part (George D. Lloyd) as its agent at Dallas, Texas, to secure applications for the various forms, hereinafter stipulated, of policies issued by the company. The amount due the company must be sent in in cash, with the application. All accident and health business cash with application." There are other provisions of the contract, but they are not material to the questions under review.

The undisputed evidence is that Lloyd delivered to Thorp 301 applications for insurance, on what is termed "limited policies," the advance premium to be paid on such policies was $2, and under the agency contract Lloyd was entitled to retain 90 cents of this sum, and was required to accompany each of such applications with $1.10, the amount to be paid Thorp as state manager of the Great American Casualty Company. Such evidence further shows that these applications were submitted to Thorp without being accompanied by the premiums due to such company. These applications were sent by Thorp to the home office at Chicago, and policies of insurance issued to the various applicants. It further appears from the evidence that the amount of premiums due the insurance company was paid by Thorp to the company at its home office in Chicago, Ill., out of his own fund, and that Lloyd subsequently paid to Thorp $100 of this amount, leaving a balance of $231.50 due Thorp. The insurance company had no claim for these uncollected premiums on Thorp or Lloyd at the time this suit was instituted. The petition does not allege that any part of this $331.50 was collected by Lloyd from the various applicants, and the evidence does not show that he collected from the policyholders any of such premiums, but the inference from the evidence is that the amount in controversy is still owing by the recipients of the policies.

Defendants in error alleged in their petition that Lloyd executed a fidelity bond with Synnott and Cameron as sureties, and set out in haec verba the conditions of the bond, which are as follows: "The condition of this obligation is that if the said George D. Lloyd shall faithfully account for and pay to E. V. Thorp at Dallas, Texas, manager of said company in the State of Texas all amounts due the company on account of insurance premiums collected by him on behalf of the company according to the terms and provisions of his agency contract, and within ten days after being notified by said E. V. Thorp at Dallas, Texas, Manager of the company, that any application for insurance taken by him has been declined by the company, refund to such applicant the premium collected, or if settlement is taken in note, deliver said note to said rejected applicant, and shall honestly and in good faith carry out the terms of his agency contract and protect and indemnify the said E. V. Thorp of Dallas, Texas, manager, and the company against any pecuniary loss whatsoever on account of his business transactions as agent,

then this obligation shall become void, otherwise to remain in full force and effect."

The bond was attached as an exhibit to the petition and made a part thereof. While it was shown by evidence that this bond was executed, it was not introduced in evidence. This of course was an oversight and the trial court appears to have believed that the bond was in evidence, for judgment in favor of defendants in error was rendered by the court on the bond. This omission will require a reversal of this case, because a recovery cannot be had on a written contract without evidence of the terms of such contract.

We are of the opinion that the trial court erroneously applied the law of this case to the undisputed facts in evidence, if we assume, as the trial court did, the bond was in evidence, especially as to the liability of Synnott and Cameron, unremunerated sureties, and for the court's guidance in another trial of this cause, we shall discuss the liabilities of the sureties on the bond under the facts developed at the trial.

That portion of the condition of the bond, on which defendants in error claim a right of recovery, is that Lloyd "shall honestly and in good faith carry out the terms of his agency contract, and protect and indemnify the said E. V. Thorp at Dallas, Texas, Manager, and the company against any pecuniary loss on account of his business transactions as agent." It is contended that, when Lloyd failed to collect the premiums, a pecuniary loss was suffered by the company because of such business transactions, and a condition of the bond thereby breached. It will be noted that the bond measures the fidelity of Lloyd by his performance of the terms of the agency contract, and his honesty and good faith in the premises depend upon whether or not he has carried out its terms as they are set out in the contract. It will also be noted that the excerpt from the agency contract, above quoted, required Lloyd to accompany each application for insurance with cash, and this excerpt clearly carries the inference that, unless such application is accompanied by cash, it will not be sent by Thorp for consideration by the company. The undisputed evidence shows that in each of these 301 applications presented to Thorp as state manager, no cash accompanied the application, and in violation of the terms of the agency contract, the application was transmitted by Thorp to the home office and a policy of insurance issued thereon. It therefore appears from the undisputed evidence that both Thorp, as state manager, and the company at its home office, waived this provision of the contract by accepting applications not accompanied by the necessary cash for the first annual premium,

and thereby materially changed the terms of the agency contract, the faithful and honest performance of which the sureties guaranteed. Under such condition, the sureties were released from the bond. Ryan v. Morton, 65 Tex. 258; G. H. & S. A. Ry. Co. v. Walker, 110 Tex. 286, 219 S. W. 815; Wilson v. Crowdus Drug Co. (Tex. Com. App.) 222 S. W. 223; Wright et al. v. McAdams Lumber Co. (Tex. Com. App.) 234 S. W. 878; Cudahy Pkg. Co. v. Shepard, 37 Tex. Civ. App. 1, 82 S. W. 786; Southland Life Ins. Co. v. Stewart (Tex. Civ. App.) 211 S. W. 460; 50 C. J. p. 112; Elliott on Contracts, § 3964; Page on the Law of Contracts, § 3121; Williston on Contracts, § 1243.

In another trial, unless it should be shown that the sureties on this fidelity bond were notified of the waiver of the provision of the agency contract above discussed, and assented thereto, judgment should be rendered in favor of such sureties. No recovery was sought against Lloyd on the agency contract, but he is sued only as principal on the bond. If in the next trial of the case the undisputed evidence should show, as in this case, that Lloyd presented the applications for insurance without accompanying same with cash, and that such applications were accepted, both by Thorp and the company, and there should be no evidence that Lloyd had collected and failed to deliver to Thorp any of the premiums on the policies in question, then there could be no recovery against Lloyd on the bond, for defendants in error, as a matter of law, waived the provision of the contract requiring advance payment of premiums, and no breach of honesty or good faith on the part of Lloyd for failure to collect the overdue premiums could exist.

We do not hold that Lloyd might not be responsible under his agency contract, or under an implied contract with Thorp, who paid to the company these premiums, to reimburse him therefor, but such is not the present suit.

It was neither alleged nor proven that the Great American Casualty Company, a foreign corporation, was doing business in this state under a legal permit. Such company had no claim against Lloyd or Thorp, for it had been remunerated for its share of the premiums on all of the policies issued. It was not a necessary or even a proper party to the suit. It did not voluntarily become a party to this suit, but was brought in by the trial court's ruling on plaintiffs in error's plea that it was a necessary party. So far as this case is concerned, the company's status in this respect is not a subject of inquiry.

The disposition we have made of this case renders it unnecessary to discuss other assignments of error, and the judgment will be reversed and remanded with instructions.

Reversed and remanded.