BIG THREE WELDING EQUIPMENT
COMPANY, Appellant,

v.

Bobby P. ROBERTS, Appellee.

No. 176.

Court of Civil Appeals of Texas.

Corpus Christi.

Jan. 27, 1966.

Rehearing Denied March 10, 1966.

O. F. Jones, of Guittard, Henderson & Jones, Victoria, for appellant.

Day, Dio & Fields, by Jean Day, Port Lavaca, for appellee.

SHARPE, Justice.

This appeal is from a judgment rendered after jury trial in favor of appellee, plaintiff below, for $15,616.00, against appellant, defendant below. The parties will sometimes hereafter be referred to as in the trial court.

The material facts may be summarized as follows: Plaintiff suffered personal injuries on August 27, 1963, while he was an employee of the Lummus Company when he became entangled with an electric welding machine rented by the defendant to Lummus, while it was undertaking a project for the DuPont Company in Victoria County, Texas. The machine consisted of an engine connected to a generator which furnished electricity for welding on the job site, all mounted on a metal frame. As manufactured and delivered to defendant, the machine had metal doors on both sides; but they had been removed at the time it

was furnished to Lummus on the job site where plaintiff was working. The fan at the front of the engine pulled air from the rear and below the doors (when they were on the machine) and pushed air out through the radiator at the front. At the time of the accident the machine was operating without the metal side doors when plaintiff passed by it carrying a manila rope which he used in his work. One end of the rope was behind him on the ground and some of it was coiled around his arm. The suction of the fan pulled the rope and the plaintiff into the machine, causing the injuries in question.

The 25 special issues submitted to the jury were answered, in substance, as follows: (1) the welding machine delivered by defendant without doors installed thereon was unsafe to be used in the vicinity, (2) this was negligence, (3) and a proximate cause of the injuries in question; (4) the defendant failed to give notice or warn of the unsafe welding machine to persons in the vicinity where delivered, (5) this was negligence, (6) and a proximate cause of the injuries; (7) defendant failed to make a proper inspection to ascertain that the welding machine was unsafe when used in the vicinity where delivered, (8) this was negligence, (9) and a proximate cause of the injuries; (10) that the welding machine in question did not have doors upon it was not open and obvious to the Plaintiff Bobby Roberts, immediately prior to the accident in question. (11) Unanswered. This issue was conditionally submitted on an answer of "It was" to issue 10. It inquired if Roberts appreciated the dangerous condition of the machine immediately prior to the accident. (12) Unanswered. This issue was conditionally submitted on an answer of "he did" to issue 11. It inquired if Roberts voluntarily exposed himself to the risks, if any, posed by the welding machine at the time and on the occasion in question. (13) That Roberts did not fail to keep a proper lookout with regard to the rope in question. (14) Unanswered. This issue was conditionally submitted on an answer of "he did not" to issue 13. It inquired as to proximate cause. (15) That Roberts did not know of the unsafe condition of the welding machine immediately prior to the accident. (16) That Roberts, in the exercise of ordinary care at the time and on the occasion in question should not have known and appreciated the unsafe condition of the welding machine in question immediately prior to the accident in question. (17) Unanswered. This issue was conditionally submitted on an answer of "he should" on issue 16. It inquired as to proximate cause. (18) That Roberts did not swing or jerk the end of the rope into the fan of the machine. (19) Unanswered. This issue was conditionally submitted on an answer of "he did" on issue 18. It inquired as to negligence of Roberts in connection with the preceding issue. (20) Unanswered. It inquired as to proximate cause. (21) The act of Lummus in failing to inspect the machine was not the sole cause of the injuries; (22) the act of Lummus in furnishing the machine for its employees was not the sole cause of the injuries; (23) the act of Lummus in failing to warn Roberts of the condition of the machine was not the sole proximate cause of the injuries; (24) the event in question was not the result of an unavoidable accident; (25) damages suffered by Roberts amounted to $15,000.00. The parties stipulated to additional amounts in the sum of $616.00, and the aggregate amount of $15,-616.00 was carried forward in the judgment.

Appellant's original brief contains 36 points of error which are grouped under three general contentions as follows: One: that plaintiff failed to establish a cause of action against defendant based upon negligence, under which heading 21 points are grouped for briefing; Two: that the trial court committed certain procedural errors which require a new trial, under which heading 14 points are grouped for briefing; and Three: that the verdict was excessive, involving only point 12.

After oral argument and submission of the case, appellant moved that it be allowed to file an amended brief for the purpose of removing certain questions concerning the form of its original brief. The amended brief contains 113 points. The motion alleges that the amended brief does not include any new or substantially different points of error or argument and does not change the basic grounds upon which appellant's appeal is predicated. Leave was granted to file the amended brief on that basis. However, in the interest of desired brevity, the case will be discussed in terms of the points in appellant's original brief. A summary prepared by the court shows the relationship of appellant's original points to those in the amended brief.[1] As will hereafter be more fully discussed, many of appellant's points are not properly preserved for review and some of them are not sufficiently briefed either in appellant's original or amended brief. All of the expanded number of points in appellant's amended brief which were properly preserved for review will be considered.

The case turns upon twelve of appellant's original points, ten of which are included in the above-mentioned group one and two of them in group two. Appellant's remaining twenty-four original points are not determinative for the reasons hereafter stated.

Under its group one points (1, 2, 3, 15, 18, 23, 30, 32, 34, & 35), appellant contends that there was no duty owing by defendant to plaintiff, particularly because of lack of privity; that there was no evidence of foreseeability, hence no proximate cause; and, under the heading "failure of trial court to prevent reversal" that the acts of the Lummus Company in accepting and furnishing the machine broke the causal connection of any duty of defendant and became intervening causes of the accident. None of these contentions is well taken.

■ The ultimate facts found by the jury and others conclusively established by the evidence support the judgment in favor of plaintiff. Defendant leased the welding machine to Lummus for immediate use on the job site. The parties agree that when the doors were in place on the sides of the machine it was safe. Defendant removed the doors and furnished it to Lummus in such condition that objects could be pulled into the machine from the sides of it. The jury finding that the machine was unsafe to be used in the vicinity in question was amply supported by evidence as are the findings that Roberts did not know of the unsafe condition and should not have known and appreciated the same immediately prior to the accident in question. In that situation the lessor-defendant is subject to liability to those whom it should expect to use the chattel or to be endangered by its probable use, for physical harm caused by its use in a manner for which, and by a person for whose use, it is leased, if it fails to exercise reasonable care to make it safe for such use or to disclose its actual condition to those who may be expected to use it. See Restatement of the Law of Torts,

---

1. Appellant's points in its original brief are listed first, with the points of the amended brief shown in parenthesis. Point one (1, 2, 3); point two (4, 5, 6); point three (7, 8, 9); point four (10, 11, 12); point five (13, 14, 15); point six (16, 17, 18); point seven (19, 20, 21); point eight (22, 23, 24); point nine (25, 26, 27); point ten (28); point eleven (29); point twelve (30); point thirteen (31, 32, 33); point fourteen (34, 35, 36); point fifteen (37, 38, 39); point sixteen (40, 41, 42); point seventeen (43, 44, 45); point eighteen (46, 47, 48); point nineteen (49, 50, 51); point twenty (52, 53, 54); point twenty-one (55); point twenty-two (56, 57, 58); point twenty-three (59, 60, 61, 62, 63, 64, 65, 66, 67); point twenty-four (112); point twenty-five (68, 69, 70); point twenty-six (71, 72, 73); point twenty-seven (74); point twenty-eight (75, 76); point twenty-nine (77); point thirty (107, 108, 109, 110, 111, 113); point thirty-one (78); point thirty-two (79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96); point thirty-three (97, 98, 99); point thirty-four (100, 101, 102); point thirty-five (103, 104, 105); point thirty-six (106).

Second, § 408. Comment "a" under that section states: "The fact that a chattel is leased for immediate use makes it unreasonable for the lessor to expect that the lessee will do more than give it the most cursory of inspections. The lessor must, therefore, realize that the safe use of the chattel can be secured only by precautions taken by him before turning it over to the lessee."

Other sections of Restatement of the Law of Torts, Second, involve similar principles. See, particularly, sections 388 and 407, reading as follows:

"§ 388. Chattel Known to be Dangerous for Intended Use.

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

"§ 407. Lessors of Chattels Known to be Dangerous

A lessor who leases a chattel for the use of others, knowing or having reason to know that it is or is likely to be dangerous for the purpose for which it is to be used, is subject to liability as a supplier of the chattel."

In this case the defendant at least had reason to know that the machine was likely to be unsafe and dangerous in connection with the use for which it was supplied. When the side doors were removed from the machine the protection afforded by them was eliminated and air was permitted to be pulled in from the openings at the sides instead of from below the doors. The act of the defendant brought about the unsafe condition of the machine which did not theretofore exist. The defendant had no reason to believe that those for whose use the chattel was supplied would realize its unsafe condition; yet the defendant failed to take any steps to inform Lummus or its employees of such unsafe condition or of the facts which made tthe chattel likely to be dangerous. The rules announced in sections 388, 407 and 408 of Restatement of the Law of Torts would therefore be applicable.

In Lackey v. Perry, 366 S.W.2d 91, 94, 95 (Tex.Civ.App.1963, n. w. h.) the court said:

"* * * Although the rule in this State is that a bailor for hire is not an insurer of the fitness of the subject of the bailment, he is liable for personal injuries to, or the death of, the bailee or third persons proximately resulting from the dangerous or defective condition of the chattel while it is being used for the purpose known by the bailor to be intended, where the bailor has not used reasonable care to see that the chattel, as of the time of its letting, was free from any defects or weakness rendering it unfit for its known use, unless the defect was known or was obvious to the person injured or killed so that the person could have avoided injury. Sturtevant v. Pagel, 134 Tex. 46, 130 S.W.2d 1017; Continental Bus System, Inc. v. Toombs, Tex.Civ.App., 325 S.W.2d 153, writ ref. n. r. e.; Nesmith v. Magnolia Petroleum Co., Tex.Civ.App., 82 S.W. 2d 721, no writ history; Vol. 2, Restatement of the Law of Torts, § 388;

8 Tex.Jur.2d, Bailment, § 19; 131 A. L.R. 845. * * *"

See, also, Producers Chemical Co. v. McKay, 366 S.W.2d 220 (Tex.1963); Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99 (1953); International Derrick & Equipment Co. v. Croix, 241 F.2d 216 (5 C.A.1957), Cert. den., 354 U.S. 910, 77 S.Ct. 1296, 1 L.Ed.2d 1428.

■ Under the rules announced in the foregoing authorities privity of contract between the plaintiff and defendant was not necessary. The defendant owed a duty to plaintiff to protect him from dangers known to the defendant or of which it should have known on account of the duty to inspect. Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853 (1950); Gennell, Inc., v. Flynn, 163 Tex. 632, 358 S.W.2d 543 (1962). It is established by jury findings that defendant took no steps to protect or to warn the plaintiff and others similarly situated of the unsafe condition of the machine. In the light of the jury findings, which are supported by legally and factually sufficient evidence, that the plaintiff did not know of the unsafe condition of the machine and should not have known and appreciated the same, defendant's contention of "no duty" is untenable and is overruled. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.1963); Bolin v. Tenneco Oil Co., 373 S.W.2d 350 (Tex.Civ.App.1963, wr. ref., n. r. e.).

Appellant's contention that there is no evidence that the machine was unsafe is also without merit. Several witnesses testified to facts and by way of opinion and conclusions based upon facts and their experience that the machine was unsafe and dangerous. Such testimony is legally and factually sufficient to support the answers of the jury to the special issues submitted, as hereinbefore set out.

■ Appellant's contention that there was no evidence of foreseeability, hence no proximate cause, cannot be sustained. Appellant furnished the machine with the side doors removed for use on a job site where fifty or more men of different crafts were working. It could reasonably be expected that those workmen might pass by the machine in close proximity to it. Well settled rules are applicable here. In Carey v. Pure Distribution Corporation, 133 Tex. 31, 124 S.W.2d 847, 849 (1939), the court said:

"* * * it is not required that the particular accident complained of should have been foreseen. All that is required is 'that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen.'"

In Dallas Ry. & Terminal Co. v. Black, 152 Tex. 343, 257 S.W.2d 416 (1953), the court said:

"The test as to whether a given act may be deemed the proximate cause of an injury, is simply whether in the light of all the attending circumstances the injury was such as ought reasonably to have been anticipated as a consequence of the act."

The injury to plaintiff was clearly foreseeable by defendant and proximate cause is not lacking.

■ Under the heading "failure of the trial court to prevent reversal" appellant argues that the acts of the Lummus Company in accepting and furnishing the machine broke the causal connection of any duty of defendant and became intervening causes of the accident, and that the trial court should have disregarded the jury answers to special issues 1–9 and rendered judgment for the defendant. Although it is doubtful that appellant has sufficiently briefed the points involved, it appears in any event that they are without merit.

The evidence was not conclusive as to such matters. *The jury findings on special issues 21, 22 and 23 that the alleged acts and omissions of Lummus were not the sole cause were favorable to the plaintiff, against the defendant, and must be upheld.*

Under its group two points appellant contends under point 29, that the trial court erred in failing to instruct the jury in regard to the definition of the term "open and obvious", and, under point 36, that the trial court erred in failing to make additional findings of fact and conclusions of law as requested by defendant. Point 29 is not well taken because special issue 10 was originally submitted to the jury without definition or request for one. The jury, during its deliberation, wrote a note to the judge concerning this issue which he declined to answer except to refer to the charge of the court as originally submitted. At that time counsel for the defendant requested the trial court to give a further instruction on the term "open and obvious", which was refused. As it appears in the transcript, the requested instruction is ambiguous and the trial court properly declined to give it. *Further instruction was not required under the conditions shown by the record.* Point 36 is also without merit. There was no necessity or occasion for findings to be made by the trial judge under Rule 279, Texas Rules of Civil Procedure or otherwise. The request made was not for findings on omitted issues in support of the judgment. Insurance Company of St. Louis v. Bellah, 373 S.W.2d 691 (Tex.Civ.App.1963, n. w. h.).

The foregoing discussion disposes of appellant's twelve points of error which have been properly preserved for review.

Appellant's remaining twenty-four points in its original brief cannot be considered by us because they fall into one or more of three categories, (1) the objections to the court's charge were not preserved for review (points 14, 16, 19, 20, 21, 22, 31, 33); (2) the motion for new trial does not fur- nish a sufficient predicate for review (the *points mentioned in (1),* immediately preceding, and points 4, 5, 6, 7, 8, 9, 10, 11, 13, 17, 24) and (3) the points are not sufficiently briefed (points 12, 25, 26, 27, 28).

The transcript contains an instrument filed with the clerk which recites that after the close of the evidence counsel for appellant dictated certain objections to the charge of the court. However, the record does not anywhere show that such transcribed objections were presented to the trial judge so that he could endorse his ruling and official signature thereon as is required by Rule 272, T.R.C.P. In this state of the record appellant's objections to the charge of the court are not properly preserved for review. Maryland Casualty Co. v. Golden Jersey Creamery, 389 S.W.2d 701, 705 (Tex.Civ.App.1965, wr. ref., n. r. e.); Grabes v. Reinhard Bohle Machine Tools, Inc., 381 S.W.2d 395, 397 (Tex.Civ. App.1964, wr. ref., n. r. e.). It further appears that even if Rule 272, T.R.C.P. had been complied with as to appellant's objections to the charge of the court, they were not properly preserved for review in the motion for new trial. In such con- *nection appellant relies upon* paragraph IX of its amended motion for new trial read- ing as follows:

"The Trial Court erred in overruling each and every *objection and excep- tion to the Court's Charge* as set forth in paragraphs 1, 2, 3, 4, 5, 6, 7, 8 and 9 of Defendant's exceptions to the Court's Charge as filed in the papers of the case to which reference is here made for all purposes the same as each paragraph therein set forth was incor- porated verbatim herein."

The dictated objections to the court's charge cover more than five pages of the transcript, and some of the paragraphs therein contain several objections recited in sequence without any indicated subdivisions. Here, there is not sufficient compliance with Rules 321, 322, and 374, T.R.C.P. Our

Supreme Court has spoken on the subject as follows:

"An assignment of error in a motion for new trial which merely directs the trial judge to scan all of a party's objections to the charge of the court is legally insufficient to require or to justify consideration of a point of error based thereon." Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887, 891 (1960).

For the reasons stated the charge of the court has been considered by us as though no objections were made to it. Error is not presented on account of such alleged objections or appellant's points in connection therewith.

Appellant's points for which there is no proper predicate in the motion for new trial, in addition to those just mentioned, are as follows: Point 4 through 11 (alleged factual insufficiency to support the jury answers to special issues 1 through 9, 10, and 16); point 13 and 17 (alleged lack of pleadings to authorize submission of special issues 1 through 6); and point 24 (alleged error in failing to grant motions for instructed verdict). See Wagner v. Foster, supra; Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407, 409 (1943).

Appellant's points not sufficiently briefed to authorize consideration are numbers 12, 25, 26, 27 and 28. Point 12 asserts that the answer to special issue 25 (the damage issue) is excessive. Point 25 asserts that "The Trial Court erred in admitting into evidence testimony which was irrelevant and immaterial." Point 26 asserts that "The Trial Court erred in failing to strike inadmissible, irrelevant, and immaterial evidence." Points 27 and 28 assert error in the overruling of defendant's special exceptions to plaintiff's petition. The points mentioned present nothing for review because not in compliance with Rule 418, T. R.C.P. Saldana v. Garcia, 155 Tex. 242,

285 S.W.2d 197 (1956); Weatherred v. Kiker, 357 S.W.2d 182 (Tex.Civ.App.1962, wr. ref., n. r. e.).

The judgment of the trial court is affirmed.